The court case on call is 208-0446, the City of Lake Forest v. Castaneda. Judging on behalf of the appellant is Charles W. Smith and arguing on behalf of the appellate is Chris Pronson. Mr. Smith, you may proceed. Thank you. Good morning, your honors. Good morning. Mr. Court, Mr. Pronson, I have the privilege of addressing you this morning on behalf of the City of Lake Forest, along with my co-counsel, Brian Smith, who authored most of the brief in this matter. We've come before you this morning seeking a reversal of the decision of the trial court in this matter, Judge Rosenberg, concerning a motion to quash and a petition to rescind statutory summary suspension. The prosecution views this case as being governed really by this court's prior decision in Rosella, but also by the dictates of the Illinois Vehicle Code, specifically 11501.5, concerning the use and receipt of preliminary breath tests. And what was the PBT being used for? The PBT was being used to determine whether the defendant had a blood alcohol level in excess of .08, your honor. But as a matter of law, what was it being used for? As a... Was it being used to, because they had a suspicion? Was it being used to establish probable cause for an arrest? What was the purpose of using it? The purpose of using it was to confirm the officer's reasonable suspicion that the defendant was under the influence of alcohol and did have a blood alcohol level in excess of .08. The statute says, uses very unique language, 501.5, states if a law enforcement officer has reasonable suspicion, not even probable cause, to believe that a person has violated 11501. Prior to the arrest, he may request the person to submit to a preliminary breath test. And... Now, the PBT can't be used after that purpose, correct, or after that point? It cannot be used by the prosecution other than to establish probable cause. But it can be used by the defendant. The defendant can use it substantively at the trial. And there is one case that says that where a defendant gets on the stand at a trial and denies that he had anything at all to drink, that case held that it could be used for limited purposes of impeaching the defendant's credibility. That is not an issue that we face here today. We feel that the facts of this case are very similar to the facts in the case of People v. Rizala that this second appellate district decided in 2003. In Rizala, the defendant was seen driving. The officer said that she had committed three different traffic violations. She gave an explanation that she had just come from a tavern, had a fight with her boyfriend, and had a couple of drinks the night being impaired. Similar to the case at Bonner. In this case, the officer didn't witness any traffic violations, but the defendant at 5 o'clock in the morning was off of Route 41 or Major Artillery Road and was stuck in the snowbank. The wind chill is 24 degrees below zero. The officer notes an odor of an alcoholic beverage on the defendant's breath, much as the situation was in Rizala. The difference, I think, really in Rizala, in Rizala the defendant took and passed three field sobriety tests and did not pass the horizontal gaze nystagmus test. And, of course, as we all know, the horizontal gaze nystagmus test is still under review by the Illinois Supreme Court. But in Rizala you had a situation where the defendant had essentially done very well on the field sobriety test. And the officer administered the PBT, preliminary breath test, and found in the court in Rizala held that that was sufficient grounds. And when we get to the issue of what I think is significant about this case is what is the standard that the prosecution is going to have to meet in order to use the PBT? What's the standard of review that we use relative to the review of your appeal? We believe it should be on a de novo basis, Your Honor. I think that's how you looked at it. Certainly the case law says it where it's an issue of law. Isn't it up to the fact finder to determine the reliability of the so-called portable breath test? Because there's certainly in the law a question about the reliability of that, and it's quite clear that that cannot be introduced in evidence in the state's case of chief because that it's not reliable. Well, it doesn't go through the same scrutiny, Justice Bowman, as the president. In fact, you say de novo. I say de novo. And you get around the general standard mixed question of fact and law regarding general motions to suppress? I believe so, Justice Bowman. But let me say that even if it is you reviewing the trial court's finding here, I would respectfully suggest that the finding of the court is stated in her order that based on the unreliability of the preliminary breath test as demonstrated by the officer's testimony, there's nothing in the record that we read. And I appreciate we're on a bystander's report, but there was nothing at the trial court. There's nothing in the record. Let me tell you what is in the record that would support it and would be up to the judges as a fact finding, that, number one, the defendant had no limitation or inhibitions relative to speech or emotion, walked perfectly, talked perfectly, not using words that are in the briefs, but appeared perfect. The negative evidence was that he admitted to drinking three or four beers, had an odor of alcohol and gum, and from reading the briefs, should take the position that certainly he didn't mention a strong odor, didn't mention a weak odor, so it had to be some moderate type of odor. And the car was off the road in a snowbank. That's correct. So when you say that there's no evidence supporting the judge's decision, arguably there is evidence and it's positive evidence relative to walking, appearance, and talking. Go ahead. I didn't mean to interrupt the court. The only thing I can say in response to that is please consider the circumstances that why was there no field sobriety test in this case? It was 24 degrees below zero. There was no limited opportunity to observe the defendant to walk. We're talking about standard review, not de novo, and I'm saying attacking the question of your opinion that it's a standard de novo review and should be a mixed question review. It'd be taken as a mixed question to concede the issue for purposes of the argument herein. There is still nothing in the record to support Judge Rosenberg's decision. The fact that there were no tests that he passed, like Rosalla, I think this makes it very similar to Rosalla in that in Rosalla there were standard field sobriety tests that were given which the defendant passed. We don't have the defendant passing or failing. What we have is a car in a snowbank at 24 degrees below zero. The officer puts the defendant into his car, and the only thing on the odor of alcohol is that he initially noted an odor of alcohol and gum, and then when he had the gum out and it was in the car, he said the odor was stronger. Not a lot. I would concede that. But, again, when I look at this case and compare it to Rosalla, I have to say, well, at least in Rosalla the defendant had three passes of a field sobriety test. So it comes down to what about this PBT? Because certainly this court, in deciding Rosalla, said that the PBT gave the officer probable cause. And, again, the statute says all the officer needs is reasonable suspicion. They ask the individual to take the PBT. And in this case, the reasonable suspicion comes from the fact that at 5 o'clock in the morning, he's off the road, he does smell of alcohol, he emits to three to four beers, and he was unable to keep the car on the road. I think the parties agreed to that. They're not arguing that point. In Rosalla, the defendant's argument was I was emotionally upset, I had just had an argument with my boyfriend, and I wasn't under the influence. So in both cases, the case at Barr and the Rosalla case comes down to the preliminary broadcast. And I have to respectfully disagree with the trial court in saying, quote, the PBT results to be unreliable based on the court having filed it. The PBT results to be unreliable based upon the officer's testimony in open court. There is no reason given other than that the court doesn't say that by all appearances, the defendant did not appear to be under the influence. Well, you know that if the court made a fuller explanation of their decision, it would make our job easier and your job easier. I understand that, Justice Bowman, but I still think that there needs to be a record. I understand. Officer Davis reminds me of the officer who just came off the midnight shift who's having trouble remembering his name as he's testifying. But he testifies basically to first there is a time limit and something has to be removed. Then, oh, wait a minute, no, I followed the instructions on the back of the PBT, which are, you know, I think in the parlance of the practitioners, they're supposed to be pretty foolproof. And then there's a recess call. All right. And something interesting happens at the recess. Apparently you or whoever was prosecuting gets to talk to the witness, which usually is a little unusual. And then the machine shows up. And the judge looks at the machine. But apparently she admits it into evidence, doesn't she? Yes, she does. Okay. And I think this comes from the nature of these hearings. And one of the reasons why I think this case is significant about the amount of evidence that was going to be required in a probable cause determination, the legislature said that there's a significant problem with driving under the influence of alcohol and a need to have these almost summary proceedings. And our sister states in Iowa and Missouri, courts aren't even involved in these statutory summary suspension hearings. They're done by a hearing officer. The legislature seemed fit to make the courts review these upon the petition. But as we come into court, there's nothing in the petition, as you look at the record, that attacks the reliability of the PBT. At this point in the year, approximately 3,200 DUI cases have been filed in Lake County, 3,200 potential petitions to rescind. As we come into the courtroom, based on the petition, the petition that were given by the defendant, which doesn't attack the PBT results, there's no motion to quash the PBT results, and we hear from the witness stand for the first time that we have a question as to the reliability of the PBT. Should the order have said I have, that the court has a concern about the reliability of the operator of the PBT, based upon the testimony? Well, I would again suggest that the burden is on the petitioner, the defendant herein, to show unreliability. That's a question. Who has the burden? The initial burden on a motion to suppress is on the defendant. Yes, Your Honor. After the defendant introduces evidence, they usually say, did you violate any law that used to be normal? Then the burden switches to the defendant, the state. And, Justice Bowman, I would concede that there was no active warrant for the defendant's arrest at the time. Okay? So in the normal parlance, and Mr. Cranston and I have done literally dozens if not hundreds of cases against each other, the burden would have shifted. We didn't say those magic words in this case. But you've got two items here, two different appeals. One is on a civil standard of the petitioner rescind, and that the burden is clearly on the petitioner to show, and your Rizala case and the second. I don't have a question because my colleagues are going to remind me that your time is about up. I hope I can save a few minutes for rebuttal. My question is, if we eliminate the breath test, is there a probable cause to arrest without that breath test? Namely, the gum, alcohol smell, and the drinking three or four beers, and the car in the snowbank. Do you think that's a sufficient probable cause? I think under the case law that I've cited in my brief, I think it is. But I do not think that the PBT should be excluded. I'm not saying, I'm not, I'm just asking that question. Assuming you don't have it, is there sufficient probable cause? And I would argue that there is, based on the smell of alcohol, the erratic driving, and the emission of three to four beers. I believe that that was sufficient. Understand too, all the case law says is that the defendant, petitioner, has to put on some evidence that he wasn't under the influence. The defendant never testified. The only witness was Officer Davis. The defendant put no evidence on him that he wasn't under the influence and chose to just attack the officer and attack the PBT. And again, we have no notice of that, and the prosecution has no notice of that. When you're talking about 3,500 cases in one county alone, although the third most populous county in the state. So you think that the officer would have a reasonable doubt about whether he was under the influence because it was minus 24. Why would he stay there and get the testing machine if he had probable cause based on car being in the snow, three, four beers, and an odor? I would respectfully submit, in fairness to the defendant, and in fairness to the defendant, we're not going to give him field sobriety tests out in the snow. And in this situation, damned if you do and damned if you don't. If you don't call for that PBT and say, why did you arrest him then, because all he had was the smell of alcohol and the emission of three to four beers in a car, you could have done a test that wouldn't have involved his dexterity being out in this 24 degree below zero weather. You could have given a PBT. I think in fairness to the defendant, we gave him that opportunity. Hold on a second. Yes, Justice O'Malley. I'm sorry. All right, so the trial court knocks out the PBT, and then she has the basis she finds. So in response to my colleague's question here, Justice Bowman, one position you have is that even if the PBT is knocked out, you still have probable cause. The trial judge felt without the PBT, you didn't have probable cause. Is that right? Well, I guess you would infer that, but it is not stated in her order. Okay. All right. Fair enough. And then the idea with the trial judge, you take this position, you're brief, you took it a while ago too here, is that there's no basis to throw out the PBT. But we do have the officer, and I think Justice Hutchinson, I don't think correctly characterized his first round of testimony. It wasn't ambiguous. I thought his first round of testimony before the recess was that the machine did require a reading period. He didn't follow it. He didn't even know what it was. And so if the trial judge hears that evidence from him, and then after this unorthodox, even I think under the informality you're talking about, I mean taking a police officer off the stand out in the hallway, and your point is they didn't object to it. But that's jumped out at me pretty loudly from these briefs. But isn't the trial judge then has to decide which version of the officer's testimony to believe. And I don't see how we could say she's not entitled in her position as the trial court to believe the first half, not the half where he's been hoodshedded or whatever. Okay. Well, and obviously, I have to take deference or objection to the officer being hoodshedded or coached. What happened was that he was sent back to the police station to bring the PBT. But what does the record show happened? The record shows that there was a recess and he was, well the record is the vice governor's report said he was consulted with the prosecutor. Yes. And I told him to go get the PBT. But that's not in the record, right? I understand that. But I think the logical inference is, is that there was a recess and then the PBT machine was produced. Okay. Typically these are not produced. They are simply. No, I understand. So anyway, the record does disclose that after the recess, the PBT machine was introduced. Right. And then he testified consistent with what was written on the PBT machine. All he said was, in my recollection is that he followed the directions. And that's why we put the machine into evidence and we put the pictures of the instructions in. Okay. And I would point out that the machine that was used was the exact same machine that was used in the Rizala case. Okay. And as opposed to, and I would just have to knock back my officer. The officer was just plain wrong in his testimony. And that's why when I put on my case, I put in the evidence of what the standards are. The petitioner didn't even ask the court to take judicial notice of the Illinois State Police standards relative to the admissibility or the standards for giving a PBT. I put those standards in. That's what should control, not what officer Davis erroneously thought about a waiting period. Well, the conclusion of whether officer Davis was erroneous, whatever, I mean, that's the trial court implicitly made that call. I mean, I, you, you put in some pretty strong evidence after the recess. She looks at this thing and she says, based on the testimony of the officer, which includes both, she's fun. And it seems to me within her prerogative to find one rather than the other. I can only suggest that what should be controlling is not the officer's testimony, but the Illinois State Police standards and what evidence the defense put in on the petitioner that it wasn't complied with. And they didn't put anything in and they didn't put anything. They did put in evidence from the officer himself that he didn't comply with what he didn't comply. He said that. I read that in your brief several times that the defendant didn't put in evidence that the procedures weren't complied with. Your position is that the officer who gave that evidence was wrong, but nevertheless, it's evidence. It's in. Okay. And the only thing I can say in response to that justice O'Malley is the fact that the, in, in Mr. Cranston is suggesting that, that the standards were not complied with. Wouldn't he have to put the standards in? How do we judge? If we're talking about a site, how he does it. He asked the officer where the students comply with. The officer says, no, if I was him, I wouldn't be putting any standards in at all after that admission from the officer. I wouldn't ask another question. First, you're done at that point. I wouldn't put the standards in. Let me get you someplace else for a second. So what happens next? You've got the, what happens actually the second issue before you sit down, he gets, there's the motion to suppress now. There's motion. Wait, wait, does he get a regular breathalyzer later then? He goes to trial and that's up in front of us too? No, that is not. The only thing for us is the, is the petition to rescind and the motion to quash. And the motion to quash the arrest, saying that there was no probable cause to arrest the defendant for driving under the influence of alcohol. Okay. And this, this, the issue is very similar to the second issue of the petition to rescind the defendant by not putting out any evidence as to the fourth issue of the petition rescind, whether his blood alcohol level was, or was not below the point, point, point of weight. Is he a dead issue? His blood alcohol at the station was above a point of weight. But that's on a different test. Yes, that's, that's, that's on a test that would be admissible at the trial. Right. That's not because the court has suppressed the arrest of the defendant. All the fruits of that evidence would, which would be later. And we suggest that, that those results should be allowed in evidence and the case should proceed to trial against the defendant. Right. Okay. I have nothing further. Jim. Thank you. May I still have a moment or two for rebuttal? And I appreciate all the time. The court has put in and. We'll have additional time for the opening argument. Because we gave the state additional time. Morning, Your Honor. I thought I'd like to start with Rosella because I know that that's what the city relies on very heavily here. And I think the important part about Rosella is the fact that it is distinguishable on its facts in great part. In Rosella, you do have some things that are the standard things that you expect to see in a DUI case that are present with respect to that defendant there, which we don't have in this case, which I think Justice Bowman and Justice O'Malley pointed out. We don't have the typical slurred speech, glassy bloodshot eyes, impaired balance. We don't have any of those factors. So I think that in order to apply Rosella to this case, you would at least have to have some of those factors also. And I understand it's a continuing subject of dispute. But in Rosella, at the time, HGN had not yet been discounted by our courts and the HGN test was present there. So that was another factor that you had present in Rosella that you simply don't have in this case. We're trying to get Rosella. He failed the HGN test. Fails the HGN. He has bloodshot eyes. His eyes are glassy. He has three, or she, I think it's a lady in Rosella. She has three unexplained traffic violations. Here we don't have, I don't know that we have a traffic violation. And that's what the judge did find. The judge found that driving off the road doesn't necessarily constitute a driving infraction if you give a reasonable, accepted statement as to why that happened. And that's what the defendant said here. Well, but the reasonable statement was that he fell asleep. Yeah. He said that he fell, and it was five o'clock in the morning. Right. Okay. Does that, does that, that reasonable explanation for driving off the road, I mean, would that be used in the, in the question of on the street with the officer for determination of probable cause, or is that going to be used later on as an excuse at trial for a finding of guilt? Well, because, because in this case it was afforded by the defendant at the time that it happened, I think you have to consider it at that time. I think the, the police officer, you can't just simply discount everything that the defendant says as a police officer and say, you know, I'm hell bound to arrest this defendant, and so I don't care how he tells me things happen. I think it's one thing that has to be, I hope I'm answering your question. I think you have to consider that. I guess my question is I can see that there's certain things that come to light that are used later at trial to determine whether guilt beyond a reasonable doubt is there. But those things, when you're coming to probable cause, you know, those things don't, either aren't factors at all in that equation or they weigh much less. But the direct question that Justice Bowman asked your opponent is, the facts we have, the car's off the road, admits drinking, smells of alcohol. Why aren't those things enough probable cause to arrest him? Well, I think one factor is, as I already stated, the fact that the defendant is able to give an explanation of how he came to be off the road. Second of all, with respect to this odor of alcohol, and Justice Bowman, you pointed this out, this odor of alcohol is ill defined. As a matter of fact, it's not defined at all. And what it's defined as being is a combined odor of gum and alcohol. And then the policeman goes on to say, you know what, that odor of alcohol really doesn't tell us anything about whether or not an individual is under the influence. We can't tell by the odor, quote unquote. You know, we've been using this term odor of alcohol for years, and we're finding out more and more that all the experts are saying alcohol is odorless. And what they're detecting are the additives of these things, I think they call them congeners, that are included with the distilled liquor or beer. But under the case law, I guess I'm asking you, you're using a litany of things there. If the officer sees somebody weaving out of their lane, and then they stop them, and there's an odor of alcohol, and the guy admits drinking, those are not, I thought case law was pretty clear that that's enough to problem cause. Well, in those situations, I think what you've got is you've got driving that's more closely associated with being under the influence. Now, here we don't have driving that's necessarily associated, and the judge makes a specific finding. What she does though, she doesn't discount them altogether. She said alone, 5 a.m. and off the road is not sufficient. Correct. She doesn't discount them 100%. No. But she, I mean, so not discounting them 100%, she does acknowledge that there was an emission. She says that a strong odor of alcohol doesn't necessarily mean you drank more or when you drank it. I mean, she's pretty specific in her findings. What she finds is that this machine either doesn't work, but I don't think that's what she meant. I think what she meant was that the officer's application was not reliable. I agree with Your Honor on that. I think that's what she found was that the officer doesn't know how to use this machine. The officer has been given some information that there's a waiting period with respect to this machine, and I respectfully disagree with Mr. Smith where he claims that the officer's wrong about that because I'm aware of the operations manual, and as Justice O'Malley pointed out, once I get the officer's testimony into the record that there's a waiting period, it's no longer incumbent upon me to introduce that particular page of the ALCO Sensor 3 manual that supports his testimony. So I don't have to do that at that point. He's admitted that evidence. Okay, but what about when you actually see the machine, which is quite clear what it says and how to, I mean, I virtually, I think I could operate it if I read the directions. I agree with that. I agree, Your Honor. And so he says that he, you know, whether he's rehabilitated or he's coached, but when he says, oh, that's what it says and that's what I did. How is that not important, or how does it not trump his mistake of the previous testimony? Because as I think Your Honor just pointed out, all that does is you could operate that machine now. And similarly, I think you could operate an in-station breathalyzer. You could follow the instructions manual. We're all educated enough to read and follow the simple little directions, and the machine's going to gig and whir and it's going to kick out a result. But there's a reason why you have to follow the procedures, because it comes back to reliability. And that's what we have stated here. That's what the judge found, that that machine reading was not reliable because of the fact that the waiting period was not observed. And so if you don't have a reliable test, it would be the same thing as if it was stopped. The machine's in evidence, doesn't it say on the machine itself? I thought it said there's no waiting period required. It doesn't say that, Your Honor. Most respectfully, the manual is what says what's required. We don't have the manual in evidence. The manual's not in evidence, but your point, when Mr. Smith was arguing, was the exact position I'm putting at the time of the hearing. My first witness is the officer, because I know what's in those police reports. I know that the defendant had gum in his mouth. I don't know how long the police officer waited. I find that out when he gets on the witness stand. That obviates my need to put the defendant on the witness stand. That obviates my need to put in page 12 of the ALCO Censor III Manual. I don't have to do that anymore. I'm entitled to rely on that. And I believe, as you stated, that when the judge has heard the testimony of the police officer on direct, and then when the police officer, in changing his testimony after he's talked with the prosecution, simply relies on the document that says this is how you make the machine work, this is how you make the machine give a reading. There's a distinction between making the machine work and giving a reading and getting a reliable reading, operating the machine in the manner in which the manual says. Let me see if I understand this. I agreed, obviously, with your first point. You got a concession from the officer, but they come back and they bring the machine in, and the label on the machine doesn't say anything about a waiting period. Now, you're telling us that the manual, which is not in evidence, does say there's a waiting period. That's what I'm telling you. All right, now, I was with you up to that point, but you're right. At this point, you've got the officer. I'd shut up at that point if I were you. But then they come back and they rebut that. But the machine, at that point, I'm not too comfortable with sitting quietly. If you know there's a manual out there that comes back and says, guess what, he's right the first time, Judge, and you chose not to do that thing. Well, but my position is, Judge, the way to operate the machine doesn't speak for the machine's reliability. It's the manufacturer's manual. No, I'm agreeing with all that. As you say, even though the machine is silent about waiting, they're implying that the machine is indicating there's no waiting necessary. You're saying I could have come back with other evidence and said there's still a requirement to wait. And that's the one I'm not sure I would have acquired. All right. My question is, did the judge make a factual finding in saying that the machine is not reliable? Yes, Your Honor, that's clear. What's the standard of review? On the factual finding, I believe it's manual. Wait. The entire standard of review for reviewing the motion to suppress. I think on the motion to quash, it's de novo, but on the issue of the petition to rescind, it's manifest wait. It's minor scamming. And if we find that the machine was operated reliably, and so that decision was against the manifest wait of the evidence, basically we start from there and everything falls on the motion to suppress, correct? I mean, that has to be vacated and you go from where you ended. I suppose that's one view, but getting back to what Justice O'Malley had said before, and I can't make this point strongly enough, that operations procedure, there's a hundred things that can be wrong with the way that the machine is used,  that aren't going to be listed on that simple little operations procedure of how you get the machine to give you a reading. So the fact that the machine won't operate at 24 degrees below zero, which is also contained in a separate part of the ALCO Sensor 3 manual, I didn't have to get to that either. And all of those things are obviously not going to be listed on the little operations manual that tells you this is how you get the machine to kick out a reading. But it does. It says if there's a temperature problem, you place the instrument in a pocket close to the body for two minutes and recheck. Right. So there are time limits, but not to when you start with saying will you take this test. Right. But we didn't get to that point, Justice Hutchinson, because of the fact that the police officer had earlier conceded that the ALCO Sensor 3 manual contains a waiting period. So once he has conceded that, it's my suggestion. And the 2,000-pound elephant that's sitting in the room is the difference in opinion between the prosecution and the defense on these cases as to what that waiting period means that's contained in that manual. I understand the prosecution has a theory as to what that waiting period means. The defense thinks it should be accorded a literal reading. And so when the police officer testifies to that fact, we're submitting to your honors that that's sufficient with respect to that. Look, the manual did come into evidence, though. The manual did not come into evidence, but the practitioners are very familiar with these manuals. Anyway, getting away from the PBT, if we determine that there was probable cause without the PBT, you're in the same dilemma. And your argument against probable cause without the PBT is that he offered some explanation for why he was in the ditch. Well, not only that, Your Honor, but the fact that the police officer is in his presence and has a chance to observe him, and he doesn't have slurred speech, he doesn't have bloodshot eyes, his eyes aren't glassy, he's not confused, he's not disoriented in any way, shape, or form. His balance and coordination are perfect in all respects, in Justice Bowman's words. And I know that that's, you know, we don't know exactly, we don't have the transcript, but that's what the impression was, that there was nothing wrong with respect to this man's motor coordination. How do you respond to the question of that's not what the judge relied on in making the ruling? And I agree that, and I wrote up this order, so I'm at fault here. I probably should have written out a more lengthy finding, but I don't see how we can find that it's anything other than implicit in that finding that there was no other evidence of reasonable grounds to arrest, because I think we have to presume that the judge knows the law, and if the judge found any other reasonable grounds to place the defendant under arrest. Well, let's look back at the idea, though. I'll look again, and I'll look again at your brief, but it seems to me, I understand the things you're saying that were not observed by the police officer, but the things that were observed by the police officer, I thought were pretty well settled, that that would be enough. I mean, and offering an explanation for why he drove erratically, I mean, that explanation could be offered for every single form of driving erratically. If we publish a case and said the guy says, well, I fell asleep, that's why I ran through the red light, I ran through the stop sign, I ran into the guy in front of me, I ran off the road, because he said he fell asleep, and the officer's going to believe that testimony, or doesn't have to believe it, just that undercuts probable cause. That seems to me is going a big stretch beyond the status case law. The guy gets into trial later on, and he's got a point, he blows zero, and he brings a doctor and says he suffers from narcolepsy or something, well, he just discovered it, now he won't drive again, he comes out not guilty, but that doesn't undercut the original finding of probable cause. Well, you know, just trying to look at it in total, where all we have is the person, it's 5 o'clock in the morning, he's tired, he drives off the road, we know that he had something to drink earlier, we have no idea when, and I think that's very important, and that's one of the things that the judge noted here, we have no idea when. I think basically if we're going to authorize an arrest in that situation, we're saying that all you need is some odor of alcohol, and it doesn't matter what the explanation or circumstances are of the odor of alcohol, and I know in reviewing some of this court's past cases, there have been cases found where two beers, three martinis, are found to be not sufficient to support probable cause, and that was the direct testimony that was given in those cases, and it was mentioned in the opinion, so if we know that those are the possible parameters, I don't see how we can then make the jump to say a person falls asleep and he has an odor of alcohol, and basically that's what we have in this case, that that person is then subject to arrest. I think that that is, that's what we're suggesting, is that that is too small of an amount of information, especially when it's contrasted with the other things that we know that you would expect to find in a person who was under the influence, and I don't think that can be disregarded. There are certain things we've come to expect to find, and yet they're totally absent in this case. So. Thank you. Thank you. The response? Again, thank you for extending me some rebuttal. Mr. Croson and I. Under the rules, you have five minutes. Thank you. Mr. Croson and I commented before we started that we hadn't had the pleasure of engaging in orals in a number of years out here, and we're getting more orals in one day than we had in the previous five years in practice. A couple of responses I want to make to Mr. Croson's points. Number one, there's a huge difference between a preliminary breath test and a breath test that is admissible at trial. There is a state requirement of certification of the operator that is required under a breath test to be admitted by the prosecution. There is no such requirement for the PBT. As Justice Hutchins suggested, she could operate it. Any one of us could. It is one tool that a police officer has in their arsenal to make a determination. Again, I would direct the Court's attention to 501.15 that says reasonable suspicion. That's all that is required to administer a PBT. Now, you look at all the, if you will, nitpicking in the prosecution's vein as to the requirements for the admission of this PBT, and that's why I think this case is significant. You don't have to argue with that. It's just a tool that requires no certification, reasonable suspicion, and I would respectfully disagree with my brother about that there's no other probable cause here. The Court and the officer certainly do not have to accept the defendant's hearsay explanation that I fell asleep. Well, it's equally logical and probable, articulable facts that he went off the road at 5 o'clock in the morning, he smelled of alcohol, and he admitted drinking. Counsel points out we don't know when he was drinking. Well, but the defendant elected not to put any evidence on in that regard. And I would point the Court's attention to its own case of People v. Marcella, where it says where the defendant presented no evidence on the issue of whether McKenzie, being the arresting officer, had a reasonable basis to conclude that the defendant was in actual physical control. It is well established that a person need not drive to be in actual physical control. Again, this Court is saying you, the petitioner, have to put on some evidence on this, and the evidence, the only opinion that was offered at this hearing was that of Officer Davis, and Officer Davis said that in his opinion the defendant was under the influence of alcohol. And the officer also testified that Mr. Castaneda told me that he fell asleep, went off the road, and he had a couple beers. Three to four beers. Three to four beers. Yes, yes. So he did, the defendant did put on some evidence, in fact, through Officer Davis. And I guess we could debate whether that's an admission or an exculpatory statement, but I think, again, the issue here is does that not prove beyond a reasonable doubt. If this Court agrees with the prosecution's position, we'll have an opportunity to explore that at trial. This is a question of probable cause, and under the PBT standard, is there just reasonable suspicion? And if we're going to allow the type of scrutiny which the defense can, in some respects, surprise upon the prosecution because their petition does not delineate what they were attacking in the PBT, otherwise the PBT machine and rules and regulations would have been there. And I apologize if it appears nefarious that I hand the officer a goal and get it, but I certainly did not hide that from my brother, and he was well aware of it. That's what happened. But I understand Justice O'Malley's comments and those of Justice Hutchinson. That doesn't look good, but there was nothing sinister about it. Bring it in, and then let's look at the rules and regulations. Now, if we're going to take this level of scrutiny, are we going to apply the same thing to a walk-and-turn test? Well, officer, what training did you have in the administration of a walk-and-turn test? And can we see what the standards are for the Illinois State Police for the administering of a walk-and-turn test? And what is the foundation, then, for the admissibility of a one-legged stand test? All these things are just tools. What was in the officer's purview? What did the officer know? Did the officer's belief at the time he had properly administered a PBT that showed a breathalyzer reading of nearly one-and-a-half times the permissible limit? He knew that the defendant had driven off the road so that there was some indicia of impairment. Yes, there's an equally argued, the defense can argue, well, that was because he was tired. But that doesn't vitiate the probable cause. The probable cause is there. The odor of alcohol, the admission of drinking, the driving off the road are significant factors that should not be ignored. Nor should the PBT, nor should I respectfully urge upon this court, the court establish that there's some foundation requirement that is not contained in the regulations and not contained in the statute because we're putting too big a burden, then, on these probable cause hearings. Again, I thank you for your, is there a question? I'm sorry. No. I didn't want to walk away. Thank you.